*704 OPINION.
Van Fossan:
After consideration of the record in this case we find no error in respondent’s determination.
The sand and gravel-bearing lands were bought by petitioner in 1908 and 1909 for approximately $32,000 with the purpose of producing therefrom and selling sand and gravel for use in making concrete. For whatever reason, this use proved unprofitable and petitioner turned to the production of sand for steel molding and sand-blast purposes. Petitioner remodeled its plant for the new production and in 1912 in furtherance of this program attempted *705 to borrow $100,000 for the erection of a new plant. The effort was unsuccessful, although petitioner offered a mortgage on its property as security. At March 1, 1913, the superior qualities of petitioner’s products were not established and its business was still in the experimental or development stage. Though petitioner’s plant had a possible capacity of 200,000 tons in 1912 and 1918, the actual production in those years was approximately 100,000 tons per year, and the maximum ever produced was 181,600 tons in 1928. Petitioner’s net income for 1912, before deducting depreciation, interest and losses, was $9,919.71 and for 1913 was $20,045. In 1919 petitioner filed a sworn schedule of valuation in answer to a questionnaire from the Bureau of Internal Revenue, purporting to cover the years. 1917, 1918, and 1919, in which it stated the value of its gravel deposit of 3Ó0 acres to be $400 per acre, or $120,000. This figure was carried over to the value assigned for its entire property of $250,000. (Petitioner’s explanation that these figures were due to inadvertence or typographical errors was not at all convincing.) In this statement petitioner also stated its profit for the years 1912 to 1919, inclusive, to be 8.7 cents per ton, exclusive of depletion, and its average annual output of finished products for the years 1912 to 1919 to be 118,862 tons.
In the face of the above and other facts to the same effect contained. in the record, petitioner contends that its gravel deposits had a fair market value on March 1, 1913, of at least $2,000,000. In support of this contention petitioner offered no evidence of sales of comparable property nor did it offer opinion evidence. It relied solely on an analytical appraisal based on discounted estimated future earnings. By use of the same method respondent arrived at a value of $300,000. The wide divergence in amounts is attributable to the use of different estimates and factors in the computations.
The determination of fair market value is largely a matter of judgment and the various theories of valuation are useful only in so far as they support a result that comports with sound judgment. The valuation proposed by petitioner does not satisfy this test.
Without here going into the intricate mathematical processes employed by counsel for petitioner in his brief, it is sufficient to say that in our opinion many of the estimated factors used are wholly unjustified by the record in the case and by the actual experience of the company. While in the absence of better evidence of value resort may properly be had to an analytical appraisal of estimated future earnings, the varying computations made by counsel for both parties in their briefs amply demonstrate the danger of a strict adherence to a theory of valuation in which estimated factors play such a prominent part.
*706 Illustrative of the factors employed by petitioner which are not warranted by the evidence is the use of an expected annual recovery of 300,000 tons when the plant capacity was but 200,000 tons and petitioner had failed in 1912 in its efforts to finance a larger plant; also the use of an expected profit of 77 cents per ton, based on one day’s operation as adjusted by petitioner’s witness, when, by a simple mathematical calculation, the net profit for 1912, as shown by its tax return, is found to be approximately 10 cents per ton, and in a sworn statement petitioner stated its profits for the years 1912 to 1919 to be 8.7 cents per ton; likewise, the assumption of a demand for 300,000 tons based on trade inquiries, while actual orders were for but 100,000 tons.
In its computations petitioner has capitalized its hopes of future production rather than expectations reasonably sure of realization. To approve the value asked would require us to shut our eyes not only to the reasonable probability but the actual experience of the company, both before and after March 1, 1913. When evidence of subsequent experience is before us which conclusively demonstrates the unsoundness of a theoretical computation of value as of an antecedent date, it is unreasonable to expect that such evidence will be disregarded and full approval given to the theoretical calculation.
We are of the opinion that petitioner has failed to demonstrate that respondent’s determination was in error, and the same is approved.
There being no deficiency determined for the year 1919, the appeal is dismissed so far as relates to that year. Cornelius Cotton Mills, 4 B. T. A. 255. No testimony was adduced on the issue of special assessment and it is .accordingly denied.
Reviewed by the Board.

Judgment mil be entered for the respondent.